

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CENTRAL SOURCE LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>annual1creditreport.com and 101 )<br>Additional Internet Domain Names, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 17-cv-00581 (AJT/IDD) |

## REPORT AND RECOMMENDATION

This MATTER is before the Court on Central Source LLC's ("Plaintiff") Motion for Default Judgment against Defendants annual1creditreport.com, annualacreditreport.com, annualalcreditreport.com, annualcredit20report.com, annualcreditcardreport.com, annualcreditcardreports.com, annualcreditcreport.com, annualcreditfreeprogramreport.com, annualcreditmonitoringreport.com, annualcreditoreport.com, annualcreditreportandscore.net, annualcreditreportcard.com, annualcreditreportcenter.com, annualcreditreportequifax.com, annualcreditreportgov.com, annualcreditreport-gov.com, annualcreditreporting.org, annualcreditreportonline.com, annualcreditreportonline5.com, annualcreditreportreport.com, annualcreditreportrequestform.com, annualcreditreportreview.net, annualcreditreportusa.com, annualcreditreportz.com, annualcreditrereport.com, annualcreditretreport.com, annualcreditscorereport.com, annualecreditreport.com, annualfederalcreditreport.com, annualfreecreditreport.net, annualfreecreditreports.net, annualfreeecreditreport.com, annualgreecreditreport.com, annuallcreditreports.com, annualreportcredit.com,

1

annualtcreditreport.com, annualycreditreport.com, comannualcreditreport.com, contactannualcreditreport.com, creditannualreport.com, creditannualreport.net, creditannualreport.org, creditannualreports.net, creditannualreports.org, creditreportannual.com, experianfreeannualcreditreport.com, floridaannualfreecreditreport.com, freeannualcredirreport.org, freeannualcreditmonitoringreport.com, freeannualcreditreoprt.com, freeannualcreditrepor.com, free-annual-creditreport.com, free-annual-credit-report.com, free-annual-credit-report.org, freeannualcreditreportgovernment.com, freeannualcreditreport-government.com, freeannualcreditreportgovernment.net, freeannualcreditreportinfo.com, freeannual-credit-report-now.com, freeannualcreditreportonline.net, free-annual-credit-reports.com, freeannualcreditreports.org, free-annual-credit-report-score.com, freeannualcreditreportscore6.com, freeannualcreditreportsrlimited.com, freeannualcreditreporty.com, freeannualcreditscorereport.com, freeannualcredittreport.com, freeannualcrediyreport.com, freeannualcredotreport.com, freeannualcrefitreport.com, freeannualreportcreditreport.com, freeannualscreditreport.org, freeannualycreditreport.com, freecreditreportannual.com, freegovernmentannualcreditreport.com, freemyannualcreditreport.com, gannualcreditreport.com, get-free-annual-credit-report.com, httpsannualcreditreport.com, lannualcreditreport.com, my-annualcreditreport.com, myannualcreditreport.org, myannualfreecreditreport.com, myannualfreecreditreport.net, myannuallycreditreport.com, nannualcreditreport.com, oneannualcreditreport.com, tannualcreditreport.com, theannualcreditreport.com, tripleannualcreditreport.com, uannualcreditreport.com, wwannualcreditreport.com, wwwannuallycreditreport.com, wwwfreeannualcreditreport.com, wwwlannualcreditreport.com, annualcreditireport.com, annualcreditrep9ort.com, annualrcreditreport.com, blogfreeannualcreditreports.org,

visitannualcreditreport.com, annualfreecreditreports.com (collectively, the "Defendant Domain Names") pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 22.)

After no licensed attorney for the Defendant Domain Names appeared at the hearing on March 9, 2018, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, and the supporting memoranda, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be **GRANTED**.

## I. INTRODUCTION

Plaintiff filed its Complaint on May 22, 2017, seeking relief under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA") and the Lanham Act, 15 U.S.C. § 1114(1)(a). (Compl. ¶ 1.) Plaintiff requests that the Court dismiss the trademark infringement count under the Lanham Act without prejudice because the relief Plaintiff seeks can be granted under the ACPA. (Dkt. No. 23 at 15.)

Plaintiff's ACPA claim is based on the bad-faith use of the Defendant Domain Names. (Compl. ¶¶ 163–65, 172.) The ACPA provides a remedy for "cybersquatting," which occurs when an individual registers or uses a trademark owner's mark as a domain name with the bad-faith intent to profit from the sale or use of the domain name.[1] Plaintiff moved for default judgment against the Defendant Domain Names and requests that this Court order the Defendant Domain Names be cancelled or transferred to Plaintiff. (*See* Dkt. No. 23 at 14–15; Compl. at 39–40.)

---

[1] *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 231 (4th Cir. 2002) (noting that the ACPA "prohibit[s] the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks –a practice commonly referred to as 'cybersquatting.'")

3

### A. Jurisdiction and Venue

To render default judgment against the Defendant Domain Names, this Court must have both subject matter jurisdiction and personal jurisdiction. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the ACPA, which is federal law.

This Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A) because the registries wherein Defendant Domain Names are registered, VeriSign, Inc. and Public Interest Registry, are located within this District. (Compl. ¶ 132.) Similarly, venue is appropriate in this District under 28 U.S.C. § 1391(b)(2), as well as 15 U.S.C. § 1125(d)(2)(C)(i), which states that "a domain name shall be deemed to have its situs in the judicial district in which . . . the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." (*See also* Compl. ¶ 134.)

Moreover, joinder of the Defendant Domain Names is appropriate in this matter because the "Defendant Domain Names share common mail servers, resolve to websites hosted on the same network as evidenced by the identical first two sets of numbers in their respective Internet Protocol version four (IPv4) addresses, share common registration dates, and/or resolve to Internet web pages that appear identical." (Dkt. No. 23 at 6.)

### B. Service of Process

The ACPA provides that service of process in an *in rem* action may be accomplished by sending notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and email addresses provided by the registrant to the registrar. 15 U.S.C. § 1125(d)(2)(A), (B). The ACPA also allows a plaintiff to effect service through publishing notice of the action as directed by the court. *Id.*

The undersigned finds that Plaintiff complied with the notice requirements necessary to bring an *in rem* action against the Defendant Domain Names under the ACPA. In accordance with 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Plaintiff sent notice of its intent to pursue an *in rem* action against the Defendant Domain Names' registrants to the postal and email addresses provided in the domain name registration record for the Defendant Domain Names. (Dkt. No. 7-1; Dkt. No. 23 at 7.)

On October 4, 2017, in accordance with 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb), Plaintiff filed a Motion for Service by Publication seeking leave to publish notice of the action in *The Washington Post* or *The Washington Times*. (Dkt. No. 6.) On October 11, 2017, the Court granted Plaintiff's Motion. (Dkt. No. 10.) On October 19, 2017, Plaintiff published notice of this lawsuit in *The Washington Post*. (Dkt. No. 11.) Accordingly, the undersigned finds that service of process has been accomplished in this action as to the Defendant Domain Names.

### C. Grounds for Default

Plaintiff filed its Complaint against 124 domain names on May 22, 2017. (Dkt. No. 1.) Counsel for the Defendant Domain Names failed to appear, answer, or file any responsive pleading in this matter. On February 9, 2018, Plaintiff filed with the Clerk's Office a request for Entry of Default.[2] (Dkt. No. 17.) The Clerk entered default against the Defendant Domain Names on February 12, 2018. (Dkt. No. 20.) On February 16, 2018, Plaintiff filed a Motion for Default Judgment and Memorandum in Support, for which the Court held a hearing on March 9, 2018. (Dkt. Nos. 22, 23, 25.) When counsel for the Defendant Domain Names failed to appear at the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

---

[2] Plaintiff moved to dismiss several domain names from this suit and seeks default judgment against only the remaining 102 domain names.

## II. FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiff established the following facts.

### A. Plaintiff's Mark

Since November 30, 2004, Plaintiff has provided to consumers a "secure means to request and obtain a free credit report once every 12 months in accordance with the Fair and Accurate Credit Transactions Act." (Compl. ¶¶ 136, 142.) Plaintiff provides this service through its website (or "mark"), www.AnnualCreditReport.com, which is the only website authorized by the U.S. Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau to provide this service. (*Id.* ¶ 137.) Plaintiff registered its website and "more than 600 domain names representing typographical errors of AnnualCreditReport as a defensive measure intended to protect consumers by limiting cybersquatting[.]" (*Id.* ¶¶ 138–39.) Plaintiff and the FTC promoted Plaintiff's service, which garnered much media coverage. (*Id.* ¶¶ 140–44.) Thus, Plaintiff's registered mark is widely recognizable as a source for Plaintiff's service of obtaining a free credit report. (*Id.* ¶ 150.)

### B. Defendants' Infringing Domain Names

The Defendant Domain Names are variations of "AnnualCreditReport." (Compl. ¶ 157.) However, the Defendant Domain Names do not comply with the mandatory disclosure provisions of the Credit Card Accountability Responsibility and Disclosure Act (the "CARD Act"), 15 U.S.C. § 1681j(g). (*Id.* ¶ 166.) The Defendant Domain Names were registered without authorization and, in some instances, entirely incorporate Plaintiff's distinctive trademark. (*Id.* ¶ 157, 161.) The Defendant Domain Names display pay-per-click advertisements or redirect consumers to third-party websites for sales solicitations. (*Id.* ¶ 159.) The registrants of the

6

...

Defendant Domain Names receive compensation when consumers click on the links to a third-party website or when the Defendant Domain Names otherwise redirect consumers to a third-party website. (*Id.* ¶ 160.) Notably, the Defendant Domain Names' registrants are not engaged in bona fide noncommercial or fair use of Plaintiff's mark. (*Id.* ¶ 163.)

### III.   EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default concedes the factual allegations of the complaint. *See, e.g., DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining

whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### ACPA

To establish an ACPA claim, Plaintiff must demonstrate that (1) Plaintiff owns a protected mark; (2) the Defendant Domain Names are confusingly similar to Plaintiff's mark; and (3) the registrants used the Defendant Domain Names with the bad-faith intent to profit from Plaintiff's mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals ("PETA") v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001) (citing 15 U.S.C. § 1125(d)(1)(A)). The ACPA provides that a court may order the cancellation of the domain name or its transfer to the owner of the mark as a remedy. 15 U.S.C § 1125(d)(2)(D).

In this case, Plaintiff sufficiently alleges that it possesses a trademark right in the Defendant Domain Names. Plaintiff owns the mark "AnnualCreditReport" (Dkt. No. 23 at 4), which is conclusive evidence of Plaintiff's "exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Further, Plaintiff registered more than 600 trademark registrations representing typographical errors of its mark. (*Id.*) Therefore, the undersigned finds that Plaintiff established it possesses a trademark right in the Defendant Domain Names.

The Defendant Domain Names are confusingly similar to Plaintiff's mark because the registrants knowingly used domain names reflective of Plaintiff's mark. (Compl. ¶ 164; *see also* Dkt. No. 23 at 11–12.) "In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010). Instead, a court may find a domain name confusingly similar if the "dominant or salient portions" of the domain are

sufficiently similar to the owner's mark. *Id.*

Here, the dominant portions of Defendant Domain Names are variations of "AnnualCreditReport," which is Plaintiff's protectable trademark. (*See* Dkt. No. 23 at 11–12.) That Defendant Domain Names contain more than "AnnualCreditReport" or are misspellings of Plaintiff's mark does not distinguish the domains from Plaintiff's trademarks in any legally meaningful way because Plaintiff's mark can be easily mistyped. Indeed, Plaintiff sought to protect consumers by registering over 600 marks representing typographical errors of "AnnualCreditReport." (Compl. ¶ 139.) As a result, a reasonable consumer could be confused by the Defendant Domain Names. The unauthorized use of Plaintiff's mark shows intent to confuse and cause irreparable harm to Plaintiff. Therefore, the undersigned finds that Plaintiff established the Defendant Domain Names are confusingly similar to Plaintiff's mark.

Lastly, Plaintiff sufficiently alleges that the registrants had the bad-faith intent to profit from using the Defendant Domain Names. Under the ACPA, courts may determine bad-faith intent by weighing nine factors. 15 U.S.C. § 1125(d)(1)(B)(i). However, courts are not required to exhaustively consider each factor in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005). In relevant part, the factors supporting a finding of bad-faith intent include the registrant's intent to divert customers away from a plaintiff's website in a manner that might adversely affect the plaintiff's trademark rights; the registrant's "offer to transfer, sell, or otherwise assign the domain name . . . for financial gain without having used, or having an intent to use, the domain name in a bona fide offering of any goods or services[;]" and the registrant's use of false contact information when registering the domain name. 15 U.S.C. § 1125(d)(1)(B)(i)(V)–(VII).

In the present case, Plaintiff alleges that the registrants have not engaged in bona fide

noncommercial or fair use of Plaintiff's mark in a website accessible under the Defendant Domain Names. (Compl. ¶ 163.) Instead, the Defendant Domain Names are being used to divert customers away from Plaintiff's website for the registrants' commercial gain. (*Id.* ¶ 165.) Additionally, the registrants supplied false contact information when registering the Defendant Domain Names, showing intent to conceal his or her true identity to mislead anyone searching for the registrants of the Defendant Domain Names. (*Id.* ¶ 167.) For the foregoing reasons, the undersigned finds that Plaintiff established that the registrants had the bad-faith intent to profit from the use of the Defendant Domain Names.

Plaintiff's Complaint pleads sufficient facts to show that Plaintiff possesses trademark rights in the Defendant Domain Names, that the Defendant Domain Names are confusingly similar to Plaintiff's mark, and that the registrant had the bad-faith intent to profit from using the Defendant Domain Names. Therefore, the undersigned Magistrate Judge finds that Plaintiff is entitled to relief under the ACPA.

## IV. **RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiff, Central Source LLC., against the Defendant Domain Names for violation of 15 U.S.C. § 1125(d). The undersigned further recommends that an Order be entered directing VeriSign, Inc. and Public Interest Registry to change the registrar of record for the Defendant Domain Names to Plaintiff's registrar of choice, GoDaddy.com LLC and to take the necessary steps to have Plaintiff listed as the registrant for the Defendant Domain Names. The undersigned also recommends dismissing Count Two of the Complaint because Plaintiff's relief may be granted exclusively under the ACPA.

## V. NOTICE

By mailing copies of this Report and Recommendation, the Court notifies the parties as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. **A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to the registrants at the physical and email addresses attached to this Report and Recommendation.

/s/
Ivan D. Davis
United States Magistrate Judge

April 18, 2018
Alexandria, Virginia